**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | | |
|---|---|---|
| TOWN & COUNTRY JEWELERS, LLC, individually and on behalf of all others similarly situated, | : : : : | CIVIL ACTION<br><br>NO. 3:15-cv-02519-PGS-LHG |
| Plaintiff, | : : | |
| v. | : : | |
| MEADOWBROOK INSURANCE GROUP, INC., | : : | |
| Defendant. | | |

**MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR AN ORDER CONDITIONALLY CERTIFYING CLASS AND GRANTING PRELIMINARY APPROVAL OF CLASS SETTLEMENT AGREEMENT**

Plaintiff Town & Country Jewelers, LLC ("Plaintiff"), individually, and as representative of the class of persons defined below in Paragraph 3(a) ("Settlement Class"), requests that this Court enter an order which (i) preliminarily approves the Class Settlement Agreement ("Agreement") with Defendant, Meadowbrook Insurance Group, Inc. ("Defendant" or "Meadowbrook") attached hereto as Exhibit A; (ii) certifies for settlement purposes the Settlement Class as defined in Paragraph 34 of the Agreement; (iii) appoints Ari Marcus, Yitzchak Zelman, and Keith Keogh as Class Counsel; (iv) appoints Plaintiff as representative of the Settlement Class; (v) sets dates for Settlement Class members to opt-out of, or object to, the Agreement; (vi) schedules a hearing for final approval of the Agreement; (vii) approves the notices to Settlement Class members in the form of Exhibit 1-Exhibit 3 to Exhibit A; and, (viii) finds that the proposed notice satisfies the requirements of due process. A copy of the proposed preliminary approval order is attached as Exhibit 4 to Exhibit A.

**I.       NATURE OF THE LITIGATION**

1. Plaintiff filed a class action Complaint on April 08, 2015 (ECF No. 1), a First Amended Complaint on June 19, 2015 (ECF No. 14), and a Second Amended Complaint on September 09, 2016 (ECF No. 49). In Plaintiff's Second Amended Complaint Plaintiff alleges that Meadowbrook violated the Telephone Consumer Protection Act, 47 U.S.C. §§227, *et seq*. ("TCPA"), by sending unsolicited advertisements by fax.

On May 29, 2015, Defendant proffered an Offer of Judgment on the Plaintiff. On June 01, 2015, Plaintiff filed a Motion to Certify the Class (ECF No. 9). The same day, Defendant filed a 12(b)(6) Motion to Dismiss in light of Defendant's pending Offer of Judgment to Plaintiff. (ECF No. 10). Plaintiff filed an opposition to the Motion to Dismiss on June 19, 2015 (ECF No. 16), and Defendant filed their reply brief in support of the Motion to Dismiss on July 21, 2015 (ECF No. 20). On July 28, 2015, the Honorable Judge Sheridan stayed this action pending the resolution of *Campbell-Ewald Co. v. Gomez*, S. Ct. Docket No. 14-857 (ECF No. 21). On February 17, 2016, in light of the Supreme Court of the United States issuing a ruling in *Campbell Ewald v. Gomez*, 136 S. Ct. 663 (2016) that an offer of judgment cannot moot a class action, the stay was vacated (ECF No. 25). An answer to the First Amended Complaint was filed on March 17, 2016 (ECF No. 26).

The Defendant then filed a Motion for Summary Judgment on April 13, 2016 (ECF No. 29). On May 23, 2016, Plaintiff filed a Memorandum in Opposition to said Motion (ECF No. 34), and Defendant filed their Reply Brief on May 31, 2016 (ECF No. 35). On June 06, 2016, the parties participated in oral argument on the summary judgment motion. On July 06, 2016, the Court denied Defendant's Motion for Summary Judgment (ECF No. 37).

On July 25, 2016, Defendant then filed a Motion to Strike Plaintiff's Class Allegations (ECF No. 40). The Plaintiff, upon stipulation agreed upon by all parties, filed their Second Amended Complaint on September 09, 2016 (ECF No. 47), after which the Defendant filed a Motion to Dismiss for Lack of Subject Matter Jurisdiction or in the Alternative to Strike Plaintiff's Class Allegations on September 09, 2016 (ECF No. 50). Plaintiff filed their Memorandum in Opposition on October 02, 2016 (ECF No. 55). On November 2, 2016, oral argument was held before Judge Sheridan via telephone.

While this case was ongoing, the parties engaged in informal discovery relating to the class. As part of that process, Meadowbrook undertook extensive efforts to determine the number of faxes that constitute advertisements sent during a four-month portion of the Class Period chosen by Class Counsel.  The purpose of this effort was to determine an approximation of the number of class members, recognizing that the number could be higher or lower than a simple extrapolation. Throughout this process the parties engaged in extensive arms-length settlement negotiations with the hope of resolving the Litigation. The Court granted the parties request to defer ruling on the Motion to Dismiss or in the Alternative Strike Plaintiff's Class Allegations filed September 09, 2016, so the parties could continue to negotiate, which ultimately culminated in an agreement to settle the claims of Plaintiff and Settlement Class, as set forth in Exhibit A.

Counsel for the Parties have investigated and analyzed the legal and factual issues presented in this action, the risks and expense involved in pursuing the litigation to conclusion, the likelihood of recovering damages in excess of those obtained through this settlement, the protracted nature of the litigation and the likelihood, costs and possible outcomes of one or more procedural and substantive appeals. Based upon counsels' review and analysis, the Parties have entered into the Agreement.

**II.     NATURE OF SETTLEMENT**

1.      The Parties desire to settle and compromise the litigation on the terms and conditions embodied in the Agreement and agree as follows:

(a)     <u>Settlement Class Certification</u>. The Parties have stipulated to certification of the following class for settlement purposes only.

All persons nationwide within the United States who are included in Meadowbrook's GoldMine customer relationship management database and received any advertisement on their telephone facsimile machines from Defendant or its agents or employees since April 8, 2011 through preliminary approval.

2.      Because Meadowbrook did not have a list of advertising fax recipients, the parties undertook extensive efforts to determine the number of faxes that constitute advertisements sent during a four-month portion of the Class Period chosen by Class Counsel.  Extrapolating that number to the four years prior to the filing of the Complaint would result in 3,636 faxed advertisements.  Of course, the total number of sent faxes and Settlement Class Members may be higher or lower than the extrapolated number. As such, the parties agreed to an over inclusive notice plan that would provide direct notice to the approximately 39,000 individuals or entities listed in Meadowbrook's GoldMine customer relationship management database for which the GoldMine entry includes a fax number.  [<u>Exhibit A</u>, Section I ¶C].

(a)     <u>Settlement Class Recovery</u>. MEADOWBROOK will create a class settlement fund of $1,500,000.00 ("Class Recovery"), which the Class Administrator, Kurtzman Carson Consultants ("KCC") ("Class Administrator") will distribute among those Settlement Class Members who submit valid claims, and who do not exclude themselves from the Settlement ("Claimants"), on a pro rata basis up to $1,500, which shall be calculated by dividing the amount remaining in the Settlement Fund (after deducting all Settlement Costs) by the total number of valid claims. [<u>Exhibit</u>

4

A, Section III ¶¶F.1]. Claimants will receive their share of the Class Recovery by check, which will be void one hundred and eighty (180) days from the date on the check. [Exhibit A, Section III ¶G.1].

Plaintiff estimates each Claimant's pro rata share after administration costs, court awarded attorney fees and incentive award will be between $300 and $500. This amount could be higher or lower depending on the number of claims submitted.

If any portion of the Settlement Class Recovery remains after the void date on the Claimants' checks, these residual funds will be redistributed where the residual amount of the uncashed checks is sufficient to provide checks of $10 on a pro rata basis to the eligible Settlement Class Members who cashed their first check. To the extent the residual amount of uncashed checks is not sufficient to provide $10 on a pro rata basis, the residual amount will be donated as a *cy pres* award to a charitable organization approved by the Court. [Exhibit A, Section III ¶¶ G.2)]. Plaintiff proposes that the *cy pres* award be donated to National Consumer Law Center earmarked to work with the FCC and Congress to protect the protections afforded by the TCPA and Defendant requests the *cy pres* to Consumer Federation of America earmarked to support consumer protections related to telephone service. [Exhibit A, Section III ¶¶ G.3]

(b) Relief to Plaintiff. Plaintiff shall move the Court for a service award to be paid out of the Settlement Fund. [Exhibit A, Section III ¶J].

(c) <u>Attorneys' Fees and Costs</u>. Plaintiff shall move the Court for an award of attorney's fees and costs to be paid to Class Counsel from the Settlement Fund and Meadowbrook reserves the right to oppose such a motion and the amount requested. [<u>Exhibit A</u>, Section III ¶I].

(d) <u>Settlement Class Notice</u>. Within five (5) days following Preliminary Approval, Meadowbrook will provide to the Claims Administrator the Class List identifying the list of individuals or entities whose entries in Meadowbrook's GoldMine customer relationship management database includes a fax number. The Claims Administrator shall rely on direct mail to notify persons in the Settlement Class in the form attached hereto as Exhibit 3. The Mail Notice will include a Claim Form which may be mailed back to submit a claim upon the Settlement Fund for a settlement award. Each notice shall refer to the Toll-Free Settlement Hotline and the Settlement Website, which will include information regarding the Settlement and provide for online submission of the Claim Form and opt out requests.

(e) <u>CAFA Notice</u>. Meadowbrook shall be responsible for timely compliance with all CAFA notice requirements.

(f) <u>Settlement Class Members' Right to Opt Out or Object</u>. Any Settlement Class member may choose to be excluded from the Agreement by opting out within the time period set by this Court. Any Settlement Class member who opts out of the Settlement Class and Agreement shall not be bound by any prior Court order or the

terms of the Agreement. [Exhibit A, Section III ¶¶ K.1]. Settlement Class members may also object to the Agreement and, if they choose to do so, they may also appear and be heard at the fairness hearing. [Exhibit A, Section III ¶¶ I.1-I.2].

### III. THE PROPOSED CLASS MEETS SATISFIES FED. R. CIV. P. 23

During the pendency of the case Meadowbrook also disclosed information relevant to the requirements of Fed. R. Civ. P. 23, including the size of the putative class, which the Parties have relied upon in reaching the Agreement and in bringing this motion. In considering the proposed settlement, the first question for the Court is whether a settlement class may be conditionally certified for settlement purposes. *See Amchem Prodcuts, Inc. v. Windsor*, 521 U.S. 591, 620 (1997) (trial court may disregard management issues in certifying a settlement class, but the proposed class must still satisfy the other requirements of Rule 23); *Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 296 (3d Cir. 2011) (*en banc*) ("[B]efore approving a class settlement agreement, a district court first must determine that the requirements for class certification under Rule Fed. R. Civ. P. 23(a) and (b) are met." (internal quotation marks oitted)); *In re Cmty. Bank of N. Va.,* 418 F.3d 277, 300 (3d Cir. 2005) ("[R]egardless of whether a district court certifies a class for trial or for settlement, it must first find that the class satisfies all the requirements of Rule 23.").

The parties have reached a proposed Agreement on behalf of the Settlement Class defined above. The proposed Agreement meets all of the requirements of Rule 23.

**A. Numerosity**.

To determine the approximate size of the Settlement Class, Meadowbrook reviewed a four-month sample of advertisements it faxed. Extrapolating that number to the four years prior to the filing of the Complaint would result in 3,636 faxes, though the actual number is likely higher or

lower. Regardless of the precise number, the size of the Settlement Class easily satisfies Rule 23(a)'s numerosity requirement of Rule 23(a)(1). The first requirements of Rule 23(a) are that the class members be so numerous that joinder is not practicable. "Numerosity requires a finding that joinder of all members is impracticable." *Bonett v. Educ. Debt Servs.,* 2003 U.S. Dist. LEXIS 9757 at *5, 2003 WL 21658267 (E.D. Pa. May 9, 2003) (quoting *Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 259 F.3d 154, 182 (3d Cir. 2001)); *Bulk Extruded Graphite,* 206 WL 891362 at *5 (Numerosity satisfied where traditional joinder of parties would be "unworkable"). Generally, if the "potential number of plaintiffs exceed 40, the [numerosity] prong of Rule 23(a) has been met." *Stewart v. Abraham,* 275 F.3d 220, 226-27 (3d Cir. 2001). In the case at bar, the Proposed Class includes several thousand members. It is unworkable for the members of a proposed class that large to be joined together in the same proceeding. As a result, the numerosity requirement is satisfied.

**B.  Commonality**.

Satisfaction of the commonality requirement under Rule 23(a)(2) requires that plaintiffs demonstrate their claims "depend upon a common contention," the resolution of which "will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal–Mart Stores, Inc. v. Dukes,* 131 S.Ct. 2541, 2551 (2011). "The commonality requirement will be satisfied if the named plaintiffs share at least one question of fact or law with the grievances of the prospective class." *Johnston v. HBO Film Mgmt., Inc.*, 265 F.3d 178, 183 (3d Cir. 2001) (internal quotation marks omitted); *see also Marcus v. BMW of N. Am., LLC*, 687 F.3d 583, 597–98 (3d Cir. 2012). As this Circuit reiterated recently, "that bar is not a high one. We have acknowledged commonality to be present even when not all plaintiffs suffered an actual injury, id., when plaintiffs did not bring identical claims, … and, most dramatically, when some plaintiffs' claims may not

have been legally viable, …. In reaching those conclusions, we explained that the focus of the commonality inquiry is not on the strength of each plaintiff's claim, but instead is "on whether the defendant's conduct was common as to all of the class members." *Rodriguez v. National City Bank*, 726 F.3d 372, 382-83 (3d Cir. 2013) (citations omitted) (reviewing commonality standard in light of *Wal–Mart Stores, Inc. v. Dukes*, 131 S.Ct. 2541 (2011), and concluding that while "Dukes is an intervening and pointedly clear explication of the law, it did not announce any change in the test for determining commonality." *Rodriguez*, 726 F.3d at 381, n. 2)).

The primary questions, which focus on the uniform conduct and procedures of the Defendant, are common to the Class. The Settlement Class members have identical legal claims based upon a facsimile advertisement sent by Meadowbrook to Plaintiff and each Settlement Class member.

**C. Typicality**.

This requirement is "designed to align the interests of the class and the class representatives so that the latter will work to benefit the entire class through the pursuit of their own goals." *In re Prudential*, 148 F.3d at 311. The "typicality" requirement of Rule 23(a)(3) is satisfied for the reasons that the "commonality" requirement of Rule 23(a)(2) is met. *Keele v. Wexler*, 149 F.3d 589, 595 (7th Cir. 1998). To conduct the typicality inquiry, the court must examine "whether the named plaintiffs' claims are typical, in common-sense terms, of the class, thus suggesting that the incentives of the plaintiffs are aligned with those of the class." *Beck v. Maximus, Inc.*, 457 F.3d 291, 295–96 (3d Cir. 2006). Here, Plaintiff's claims share the same common issues of fact and law as those held by the Settlement Class members – namely, Meadowbrook faxed an advertisement to the Plaintiff and Settlement Class members which was allegedly in violation of the TCPA. The Plaintiff as a member of the Settlement Class, has the same interest in resolution of the issues as

9

all other members of the Class and its claims are typical of all members of the Class. In the present matter, the typicality requirement is satisfied.

### D. Adequacy of Representation.

Plaintiff's counsel is experienced in class action and TCPA litigation. In addition, Plaintiff has no interests which are antagonistic to the Settlement Class members. Therefore, Plaintiff and his counsel satisfy the adequacy of representation requirement embodied in Rule 23(a)(4). The Declaration of Ari Marcus, Keith Keogh and Yitzchak Zelman, which are respectively attached hereto as <u>Exhibit B</u>, <u>Exhibit C,</u> and <u>Exhibit D</u> outline their qualifications to serve as Class Counsel.

### E. Predominance and Superiority.

In addition to meeting the requirements of Rule 23(a), a money-damages class must satisfy Rule 23(b)(3), namely that (1) "questions of law or fact common to the members of the class predominate over any questions affecting only individual members" and, (2) "a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed R. Civ. P. 23(b)(3). Both of these requirements are satisfied in the present case.

#### 1. Common Questions of Law and Fact Predominate Over Individual Ones

Resolution of the common issues of fact and law in this case will not only promote the efficient adjudication of these matters, it will dispose of them entirely. Allowing this case to proceed as a class action would be an efficient means of resolving the claims at issue, where there are thousands of members of the Proposed Class, and each member possesses a claim based on receipt of fax solicitations sent to them by the Defendant. Plaintiff alleges on behalf of the Class that the sending of those faxes – the factual issue central to Plaintiff's claim which are generally common to all members of the Settlement Class – is a violation of the TCPA as a matter of law. This legal question is common to all members of the Settlement Class.

### 2. A Class Action is the Superior Method for Resolving the Class Claims

As to superiority, class settlement is the most efficient means of adjudicating the disputes raised here. Aggregating all possible TCPA claims based on Defendant's advertisement practices will eliminate the potential for "repetitious litigation" and "inconsistent adjudications" if the claims were brought separately, and which otherwise "might stand in the way of a beneficial comprehensive settlement." *See D'Alauro,* 168 F.R.D. at 458. Separately litigating the common issues that bind the Settlement Class would be a practical impossibility, even assuming consumers had notice of their claims and it were economically feasible to pursue these claims on their own. Where the alternative to a class action is likely to be no action at all for most of the class members, there is strong presumption in favor of a finding of superiority. *Cavin v. Home Loan Ct., Inc.* 236, F.R.D. 387, 396 (N.D. Ill. 2006).

### IV. PRELIMINARY APPROVAL SHOULD BE GRANTED

When a proposed class-wide settlement is reached, it must be submitted to the Court for approval. H. Newberg & A. Conte, NEWBERG ON CLASS ACTIONS § 11.41 (4th ed. 2009) ("NEWBERG"); *Oslan v. Law Offices of Mitchell N. Kay*, 232 F. Supp. 436, 439-40 (E.D. Pa. 2002). Preliminary approval is the first of essentially three steps that comprise the approval procedure for settlement of a class action. The second step is the dissemination of notice of the settlement to all class members. The third step is a settlement approval or final fairness hearing. *See* MANUAL FOR COMPLEX LITIGATION 4TH, § 21.63 (2004), available at http://www.fjc.gov ("MANUAL"). While a settlement class must satisfy each of the requirements of Rule 23(a) and Rule 23(b)(3), "the fact of settlement is relevant to a determination of whether

11

the proposed Class meets the requirement imposed by the Rule." *In re: Prudential Ins. Co. of America Sales Litigation*, 148 F.3d 283, 308- 09 (3d Cir. 1998)).

The question presented on a motion for preliminary approval of a proposed class action settlement is whether the proposed settlement appears fair and reasonable. MANUAL at § 21.62. As one court summarized:

> Such a preliminary determination requires the Court to consider the following factors: "(1) the negotiations occurred at arm's length; (2) there was sufficient discovery; (3) the proponents of the settlement are experienced in similar litigation; and (4) only a small fraction of the class objected." Id. (citing 2 Herbert Newberg & Alba Conte, Newberg on Class Actions § 11.41, at 11–91 (3d ed. 1992)); see also In re Warfarin Sodium Antitrust Litig., 212 F.R.D. 231, 254 (D. Del. 2002). If a court concludes, after consideration of those factors, that the settlement should be preliminarily approved, "... an initial presumption of fairness ..." is established. *In re Gen. Motors Corp.*, 55 F.3d at 785.

*In re Linerboard Antitrust Litig.*, 292 F.Supp.2d 631, 638 (E.D. Pa. 2003).

The approval of a proposed settlement of a class action is a matter within the broad discretion of the trial court. Of course, settlements of class actions are favored in the law. *See In re: General Motors Truck Litig.*, 55 F.3d 768, 784 (3d Cir. 1995). Preliminary approval does not require the trial court to affirmatively answer the ultimate question of whether a proposed settlement is fair, reasonable and adequate. That determination is made only after notice of the settlement has been given to the members of the class and after they have been given an opportunity to voice their views of the settlement or be excluded from the class. *See In re Linerboard Litig.*, 296 F. Supp. 2d 568, 577-78 (E.D. Pa. 2003) (citing factors established in *Girsh v. Jepson,* 521 F.2d 153 (3d Cir. 1975)).

The question of whether a proposed settlement is fair, reasonable and adequate necessarily requires a judgment and evaluation by the attorneys for the parties based upon a comparison of "the terms of the compromise with the likely rewards of litigation." *Weinberger v. Kendrick*, 698 F.2d 61, 73 (2d Cir. 1982); *Collier v. Montgomery County*, 192 F.R.D. 176, 184 (E.D. Pa. 2000)

(citing factors established in *Girsh*). Therefore, many courts recognize that the opinion of experienced counsel supporting the settlement is entitled to considerable weight. *See Collier*, 192 F.R.D. at 186; *Fisher Bros. v. Cambridge-Lee Indus, Inc.*, 630 F. Supp. 482, 487-88 (E.D. Pa. 1985).

In addition to being substantively reasonable in relation to the risks and likely rewards of litigation, the proposed settlement must be "the result of good faith, arms length negotiations." *Collier*, 192 F.R.D. at 184. In evaluating this requirement, courts proceed as follows:

> If the proposed settlement appears to be the product of serious informed, noncollusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to Class Representatives or segments of the Class, and falls within the range of possible approval, then the court should direct that notice be given to the Class Members of a formal fairness hearing, at which evidence may be presented in support of and in opposition to the settlement. *Id.*

A finding that these factors are present establishes an initial presumption of fairness. *Id.*; *see also General Motors*, 55 F.3d at 785-86. Here, the proposed settlement meets these standards.

The expected recovery for the class greatly exceeds many other TCPA class settlements. *See cf. Couser v. Comenity Bank*, 125 F. Supp. 3d 1034 (S.D. Cal. 2015) (settlement amount favored final approval, where claims rate resulted in *pro rata* payment of approximately $13.75 per class member); *Manouchehri v. Styles for Less, Inc.*, No. 14cv2521 NLS, 2016 U.S. Dist. LEXIS 80038, at *4 (S.D. Cal. June 20, 2016) (preliminarily approving settlement where class members could choose to receive either a $10 cash award or a $15 voucher); *Spillman v. RPM Pizza, LLC*, 2013 U.S. Dist. LEXIS 72947 at *2, *9 (M.D. La. May 23, 2013) (final approve for up to $15 for each claimant); *Garret, et al. v. Sharps Compliance, Inc.*, No. 1:10-cv-04030, Dkt. No. 65 (N.D. Ill. Feb. 23, 2012) (claimants received between $27.42 and $28.51); *Hashw v. Dep't Stores Nat'l Bank*, 2016 U.S. Dist LEXIS 61004 (D. Minn. 2016) (finally approving settlement where "each claimant will receive approximately $33.20."); *In re Capital One TCPA Litigation*,

12-cv-10064 (MDL No. 2416) (N.D. Ill. Feb. 12, 2015) (granting final approval were each claimant would be awarded $39.66); *Adams v. AllanceOne Receivables Mgmt., Inc.*, No. 3:08-cv-00248-JAH-WVG, Dkt. No. 137 (S.D. Cal. Sept. 28, 2012) (claimants received $40 each); *Wright v. Nationstar Mortg. LLC*, 2016 U.S. Dist. LEXIS 115729, *28 (N.D. Ill. 2016) (finally approving "$45.00 recovery per claimant"); *Steinfeld v. Discover Fin. Servs.*, 2014 U.S. Dist. LEXIS 44855 at *4 and *11-*12 (N.D. Cal. Mar. 31, 2014) ($46.98 to each claimant); *Gehrich v. Chase Bank U.S.A, N.A.*, 2016 U.S. Dist. LEXIS 26184 (N.D. Ill 2016) (final approval where "the actual recovery per claimant is approximately $52.50"). Here, Plaintiff expects each class member who submits a claim to receive between $300.00 and $500.00.

Thus, the amount each Settlement Class member shall receive is fair, reasonable, and adequate given the purposes of the TCPA and the risk, expense, and uncertainty of continued litigation. *See Hashw,* 2016 U.S. Dist LEXIS 61004 at*13 ("Given that victory was by no means certain and even if achieved, victory likely would have been a lengthy and costly affair for class members (as the TCPA includes no fee-shifting provision), in the Court's view an immediate, definite payment of $33.20 is both reasonable and fair.")

Finally, the release in this case is narrow in that it is limited to the sending of faxes. Specifically the release provides

> As of the Effective Date, Plaintiff and the Settlement Class Members provide the following releases:
>
> Plaintiff and each and all Settlement Class Members, on behalf of themselves and their respective heirs, executors, administrators, representatives, agents, attorneys, partners, successors, predecessors-in-interest, assigns and any authorized users of their accounts, will be deemed to have fully released and forever discharged Meadowbrook Insurance Group, Inc., its Insurer, and each and all of its former and future direct and indirect parent companies, affiliates, subsidiaries, agents, successors, and/or predecessors in interest and all of the aforementioneds' respective officers, directors, employees, attorneys, shareholders, agents, vendors and assigns (together, the "Released Parties") from any and all rights, duties, obligations, claims, actions, causes of action or liabilities, whether

arising under local, state or federal law, whether by Constitution, statute, contract, rule, regulation, any regulatory promulgation (including, but not limited to, any opinion or declaratory ruling), common law or equity, whether known or unknown, suspected or unsuspected, asserted or unasserted, foreseen or unforeseen, actual or contingent, liquidated or unliquidated, punitive or compensatory as of the date of Preliminary Approval that arise out of or are related in any way to the actual or alleged sending of faxes in violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227, et seq. (the "Released Claims").

*See Exhibit A* p.13 ¶H.

## V.  CONCLUSION

Accordingly, the Parties request that this Court grant preliminary approval of the Settlement Agreement and the proposed order attached as Exhibit 4, which provides the following schedule:

| | |
|---|---|
| _____<br>[30 days after the date of this Order] | Deadline for notice to be provided in accordance with the Agreement and this Order (Notice Deadline) |
| _____<br>[30 days after the Notice Deadline] | Deadline for filing of Plaintiff's Motion for Attorneys' Fees and Costs and Service Awards |
| _____<br>[60 days after the Notice Deadline] | Deadline to file objections or submit requests for exclusion (Opt-Out and Objection Deadline) |
| _____<br>[90 days after the Notice Deadline] | Deadline for Settlement Class Members to Submit a Claim Form (Claim Period) |
| _____<br>[14 days prior to Final Approval Hearing] | Deadline for Parties to file the following:<br>(1) List of persons who made timely and proper requests for exclusion (under seal);<br>(2) Proof of Class Notice; and<br>(3) Motion and memorandum in support of final approval, including responses to any objections. |
| ____ | Final Approval Hearing |

15

| [No earlier than 135 days from the entry of this Order] | |
|---|---|

Respectfully submitted this 12th day of May, 2017.

*s/ Ari Marcus*

Ari H. Marcus, Esq.
MARCUS & ZELMAN, LLC
1500 Allaire Avenue, Suite 101
Ocean, New Jersey 07712
Telephone: (732) 695-3282
Facsimile:   (732) 298-6256
E-Mail: Ari@MarcusZelman.com

Keith J. Keogh
Bar Number 6257811IL, 0126335FL
KEOGH LAW, LTD.
55 W. Monroe, Suite 3390
Chicago, Illinois 60603
Telephone:  (312) 374-3405
Fax:  (312) 726-1093
E-Mail: Keith@Keoghlaw.com

*Attorneys for Plaintiff*