## SETTLEMENT AGREEMENT AND RELEASE

This Settlement Agreement and Release (the "Agreement") is made by and among Town & Country Jewelers, LLC ("Plaintiff"), on behalf of itself and the Settlement Class (as defined below), on the one hand, and Meadowbrook Insurance Group, Inc. ("Defendant" or "Meadowbrook"), on the other hand.   Plaintiff, Class Counsel (as defined below) and Meadowbrook hereby stipulate and agree that, in consideration of the promises and covenants set forth in this Agreement and upon entry by the Court (as defined below) of a Final Approval Order (as defined below), all claims of Plaintiff and the Settlement Class Members (as defined below) in the action entitled Town & Country Jewelers, LLC v. Meadowbrook Insurance Group, Inc., et al, U.S.D.C. District of New Jersey, Case No. 3:15-CV-02419-PGS-LHG (the "Action"), shall be settled, compromised and released upon the terms and conditions contained herein.

## I.  RECITALS

This Agreement is made with reference to and in contemplation of the following facts and circumstances:

A.   The Action alleges that Meadowbrook violated the Telephone Consumer Protection Act, 47 U.S.C. § 227 (the "TCPA"), by sending advertisements via facsimile transmittal without the prior express consent of Plaintiff and the putative class members.

B.   Meadowbrook vigorously denies all claims asserted in the Action and denies all allegations of wrongdoing and liability.  Meadowbrook desires to settle the Action on the terms set forth herein solely for the purpose of avoiding the burden, expense, risk and uncertainty of continuing these proceedings.

C.   Meadowbrook has undertaken extensive efforts to determine the number of faxes that constitute advertisements sent during a four-month portion of the Class Period chosen by Class Counsel.  Extrapolating that number to the four years prior to the filing of the Complaint would result in 3,636 sent faxes.  The total number of sent faxes and Settlement Class Members may be higher or lower than the extrapolated estimate.

1

D.     This Agreement results from and is the product of extensive, good faith and arm's length negotiations. The Parties enter into this Agreement, subject to preliminary approval and final approval by the Court as required by Rule 23 of the Federal Rules of Civil Procedure, to fully, finally and forever resolve, discharge and release all rights and claims of Plaintiff and the Settlement Class Members (as defined below) in exchange for Meadowbrook's agreement to pay the total amount of $1,500,000, inclusive of Settlement Costs and Settlement Awards as set forth below.

E.     The Parties understand, acknowledge and agree that the execution of this Agreement constitutes the settlement and compromise of disputed claims. This Agreement is inadmissible as evidence except to enforce the terms of the settlement and is not an admission of wrongdoing or liability on the part of any Party to this Agreement. It is the Parties' desire and intention to effect a full, complete and final settlement and resolution of all existing disputes and claims as set forth herein.

**NOW, THEREFORE,** in light of the foregoing, for good and valuable consideration, the receipt of which is hereby mutually acknowledged, Plaintiff, on its behalf and on behalf of the Settlement Class, and Meadowbrook agree to the Settlement (as defined below), subject to approval by the Court, as follows:

## II.     DEFINITIONS

A.     In addition to the terms defined elsewhere within this Agreement, the following defined terms apply throughout this Agreement and the attached exhibits:

1.     "Action" means the action entitled Town & Country Jewelers, LLC v. Meadowbrook Insurance Group, Inc., et al, U.S.D.C. District of New Jersey, Case No. 3:15-CV-02419-PGS-LHG.

2.     "Agreement" means this Settlement Agreement and Release and the attached exhibits.

3.     "Meadowbrook" means Meadowbrook Insurance Group, Inc.

4.     "Meadowbrook's Counsel" means Hunton & Williams LLP.

2

5.     "CAFA Notice" refers to the notice requirements imposed by 28 U.S.C. § 1715(b).

6.     "Claim Form" or "Claim" means the claim form to be submitted by the Settlement Class Members in order to receive a Settlement Award pursuant to Section III.F of this Agreement, subject to approval by the Court, substantially in the form attached hereto as Exhibit 1.

7.     "Claim Period" means the period of time in which a Settlement Class Member must submit a Claim Form to be eligible to receive a Settlement Award as part of the Settlement.  As set forth in III.B.1, the last day of the Claim Period will be 60 days following the Notice Deadline.

8.     "Claims Administrator" means Kurtzman Carson Consultants ("KCC"). The Claims Administrator shall be responsible for providing the Class Notice as well as services related to administration of the Settlement.

9.     "Class Counsel" means Marcus & Zelman, LLC and Keogh Law, Ltd. to be appointed counsel for the Settlement Class.

10.    "Class Notice" means any type of notice that may be utilized to notify persons in the Settlement Class of the Settlement, including one or more of the following methods: E-mail Notice, Mail Notice, Website Notice and any different or additional notice that might be ordered by the Court.  A description of the contemplated Class Notice is provided in Section III.E of this Agreement.

11.    "Class List" means the list of approximately 39,000 individuals or entities listed in Meadowbrook's GoldMine customer relationship management database for which the GoldMine entry includes a fax number.  The Parties recognize and acknowledge that the Class List is substantially broader than a list of Settlement Class Members and includes numerous entities that are not Settlement Class Members.

12.    "Class Period" means the period from April 8, 2011 through the date of preliminary approval.

3

13.     "Court" means the United States District Court for the District of New Jersey.

14.     "*Cy Pres* Distribution" means monies that may be distributed in connection with the Settlement pursuant to Section III.G.3 of this Agreement.

15.     "Effective Date" means the fifth business day after the last of the following dates:

a.      All Parties, Meadowbrook's Counsel and Class Counsel have executed this Agreement;

b.      The Court has entered, without material change, the Final Approval Order; and

c.      The final disposition of any related appeals, including without limitation appeals of persons who have objected to the Settlement, and in the case of no appeal or review being filed, expiration of the applicable appellate period.

Notwithstanding the foregoing, at any time after entry of the Final Approval Order, Meadowbrook shall have the right to declare that the Effective Date has occurred.

16.     "Final Approval Hearing" means the hearing during which the Court considers the Parties' request to enter the Final Approval Order granting final approval of the Settlement and to determine the amount of fees, costs and expenses awarded to Class Counsel and the amount of the service awards to Plaintiff.

17.     "Final Approval Order" means the order and judgment that the Court enters upon finally approving the Settlement, the proposed form of which is attached hereto as Exhibit 2. "Final Approval" occurs on the date that the Court enters, without material change, the Final Approval Order.

18.     "Insurer" means XL Catlin.

19.     "Mail Notice" means the postcard notice that will be provided pursuant to Section III.E.1 of this Agreement, subject to approval by the Court, substantially in the form attached hereto as Exhibit 3.

4

20.     "Notice Deadline" shall have the meaning set forth in Section III.B.1 of this Agreement.

21.     "Opt-Out and Objection Deadline" shall have the meaning set forth in Section III.B.1 of this Agreement.

22.     "Parties" means Plaintiff and Meadowbrook.

23.     "Plaintiff" means Town & Country Jewelers, LLC.

24.     "Preliminary Approval Order" means the order that the Court enters upon preliminarily approving the Settlement, the proposed form of which is attached hereto as Exhibit 4. "Preliminary Approval" occurs on the date that the Court enters, without material change, the Preliminary Approval Order.

25.     "Redistribution" means monies that may be distributed as described in Section III.G.2. below.

26.     "Released Claims" means all claims to be released as set forth in Section III.H of this Agreement.  The "Releases" means all of the releases contained in Section III.H of this Agreement.

27.     "Released Parties" means those persons and entities released as set forth in Section III.H of this Agreement.

28.     "Releasing Parties" means Plaintiff and each and all Settlement Class Members, on behalf of themselves and their respective spouses, heirs, executors, administrators, representatives, agents, attorneys, partners, successors, predecessors-in-interest, assigns, any other person or entity claiming through them as set forth in Section III.H of this Agreement.

29.     "Settlement Award" means a cash award that may be available to eligible Settlement Class Members pursuant to Section III.F of this Agreement.

30.     "Settlement Costs" means: (i) any award of attorneys' fees and costs to Class Counsel approved by the Court; (ii) any service awards to Plaintiff approved by the Court; (iii) all costs of printing and providing notice to persons in the Settlement Class (including, but not limited to, costs for Direct Notice and Settlement Website and as agreed to by the Parties);

5

(iv) all costs of administering the Settlement through completion, including, but not limited to, the cost of printing and mailing settlement payments (including the cost of printing and mailing settlement payments following the redistribution of any amounts that remain from uncashed checks, as set forth in Paragraph III.G.2), Claim Forms and opt-out requests, the cost of obtaining and maintaining the URL for the Settlement Website, the cost of maintaining a designated post office box for receiving Claim Forms and the costs of processing opt-out requests; and (v) the fees, expenses and all other costs of the Claims Administrator incurred through completion of the Settlement.

31.     "Settlement Website" means the website established by the Claims Administrator to aid in the administration of the Settlement.

32.     "TCPA" means the Telephone Consumer Protection Act, 47 U.S.C. § 227, et seq.

33.     "Settlement" means the settlement which the Parties have entered to resolve the Action and which is intended to resolve all Released Claims and all other claims asserted in the Action by or on behalf of the Settlement Class.  The terms of the Settlement are set forth in this Agreement and the attached exhibits, which are incorporated by reference herein.

34.     "Settlement Class" means:  "All persons nationwide within the United States who are included in Meadowbrook's GoldMine customer relationship management database and received any advertisement on their telephone facsimile machines from Defendant or its agents or employees since April 8, 2011 through preliminary approval."  Excluded from the Settlement Class are the Judge to whom the Action is assigned and any member of the Judge's staff and immediate family, as well as all persons who are validly excluded from the Settlement Class.

35.     "Settlement Class Member" means any person in the Settlement Class.

36.     "Settlement Fund" means the amount of $1,500,000 to be paid by Meadowbrook as set forth in this Agreement.

6

37.   "Toll-Free Settlement Hotline" means the toll-free telephone number established by the Claims Administrator to aid in the administration of the Settlement.

38.   "Website Notice" means the website notice provided pursuant to Section III.E.2 of this Agreement, substantially in the form attached hereto as <u>Exhibit 3</u>.  The Website Notice will be posted on the "Settlement Website."

## III.   TERMS OF SETTLEMENT

A.   <u>Conditional Certification of the Settlement Class</u>.  Solely for the purposes of providing Class Notice and implementing the terms of this Agreement, the Parties agree to certification of the Settlement Class.  In the event of failure to obtain any of the required provisions of such orders, including, but not limited to, the denial of any motion seeking preliminary or final approval, the Parties will return, without prejudice, to the <u>status quo ante</u> as if no Settlement had been negotiated or entered into and this Agreement, the Settlement and their existence shall be inadmissible to establish any fact relevant to any alleged liability of the Released Parties for the matters alleged in the Action or for any other purpose.  No agreements, documents or statements made by or entered into by any Party in connection with the Settlement may be used by Plaintiff, any person in the proposed Settlement Class, Meadowbrook or any other person to establish liability, any defense and/or any of the elements of class certification, whether in the Action or in any other proceeding.

B.   <u>Preliminary Approval</u>.

1.   <u>Preliminary Approval Motion.</u> Plaintiff will move the Court for entry of the Preliminary Approval Order as soon as practible upon execution of this Agreement, which shall specifically include provisions that: (a) preliminarily approve the Settlement reflected herein as fair, adequate and reasonable to the Settlement Class, and within the reasonable range of possible final approval; (b) conditionally certify the Settlement Class for settlement purposes only and appoint Class Counsel as counsel for the Settlement Class for settlement purposes only; (c) approve the forms of Class Notice and find that the Notice Program constitutes the best notice practicable under the circumstances, provides due and sufficient notice to the Settlement Class

7

and fully satisfies the requirements of due process and Federal Rule of Civil Procedure 23; (d) direct that notice be provided to the Settlement Class, in accordance with this Agreement, within thirty (30) days following entry of the Preliminary Approval Order (the "Notice Deadline"); (e) establish a procedure for Settlement Class Members to object to the Settlement or exclude themselves from the Settlement Class; (f) set a deadline sixty (60) days after the Notice Deadline, after which no one shall be allowed to object to the Settlement or exclude himself or herself from the Settlement Class or seek to intervene (the "Opt-Out and Objection Deadline"); (g) approve the Claim Form and the claims process described herein; (h) set the Claim Period for the submission of Claims to end sixty (60) days after the Notice Deadline; (i) establish a deadline for Class Counsel to move the Court for an award of attorneys' fees and costs to be paid to Class Counsel and for service awards to be paid to Plaintiff; and (j) schedule a hearing to consider Final Approval of the Settlement, which shall be scheduled no earlier than thirty (30) days after the Opt-Out and Objection Deadline.

2.      Stay/Bar of Proceedings.  All proceedings in the Action will be stayed following entry of the Preliminary Approval Order, except as may be necessary to implement the Settlement or comply with the terms of the Settlement.  Pending determination of whether the Settlement should be granted final approval, the Parties agree not to pursue any claims or defenses otherwise available to them.

C.      Settlement Consideration.

1.      The Settlement Fund.  Within thirty (30) days of the Effective Date, as full and complete consideration for the Settlement, Meadowbrook shall fund the Settlement Fund except that Meadowbrook shall deposit sufficient funds to pay for adminstrations which said amount shall be deducted from the Settlement Fund.  The Claims Administrator shall maintain the Settlement Fund in a segregated account at a financial institution with more than $10 billion in assets in an account or accounts insured by an agency or agencies of the United States government, with insurance that exceeds the amounts deposited.  The Settlement Fund shall be used to pay all of the following:  (a) Settlement Costs; (b) all Settlement Awards to claiming

8

Settlement Class Members; and (c) any *Cy Pres* distribution pursuant to Section G.3. Meadowbrook's obligation to fund the Settlement Fund shall be reduced by Meadowbrook's payment or advancement of Settlement Costs prior to funding of the Settlement Fund, and Meadowbrook shall receive full credit against its funding obligation for all such payments or advancements. In no event shall Meadowbrook's total financial obligation with respect to the Settlement exceed $1,500,000. Meadowbrook shall not, under any circumstances, be obligated to pay any amounts in addition to the Settlement Fund in connection with the Settlement.

   2. <u>Return Of Settlement Fund In Event Of Termination</u>.  In the event that the Settlement is not approved, or is terminated, canceled or fails to become effective for any reason including, but not limited to, Section K.3 below, the money remaining in the Settlement Fund (including accrued interest), less expenses and taxes incurred or due and owing and payable from the Settlement Fund in accordance with this Agreement, shall be returned to Meadowbrook within 15 days of the event that causes the Agreement to not become effective.

   D. <u>Claims Administrator</u>. The Claims Administrator shall administer various aspects of the Settlement as described herein, and perform other functions assigned to the Claims Administrator elsewhere in this Agreement, including, but not limited to:  effectuating the Notice Program pursuant to Section E; calculating the amount of the Settlement Awards and distributing the Settlement Fund pursuant to Section III.G; and, in the event of termination of the Settlement, returning the Settlement Fund pursuant to Section C.2, along with any accrued interest or earnings, to Meadowbrook. The duties of the Claims Administrator, in addition to other responsibilities that are described in this Agreement, are as follows:

   1. Obtain from Meadowbrook, on a confidential basis, the list of the approximately 39,000 individuals or entities whose entries in Meadowbrook's GoldMine customer relationship management database includes a fax number;

   2. Provide the Notice, as described herein and approved by the Court;

   3. Establish and maintain a Post Office box for requests for exclusion from the Settlement Class;

     4.      Establish and maintain the Settlement Website;

     5.      Establish and maintain an automated toll-free telephone line (which shall not have live operators) for persons in the Settlement Class to call with, and/or to leave questions or messages regarding, Settlement-related inquiries and to answer the questions of persons who call with or otherwise communicate such inquiries (except that the Claims Administrator shall not give, and shall not be expected to give, legal advice);

     6.      Process all claims and requests for exclusion from persons in the Settlement Class;

     7.      Provide weekly reports and a final report to Class Counsel and Meadowbrook's Counsel that summarize the number of requests for exclusion received in that period, the total number of exclusion requests received to date and other pertinent information, including claims information;

     8.      In advance of the Final Approval Hearing, prepare an affidavit to submit to the Court that verifies that the Notice Program directed by the Court has been effectuated, confirms the number of Valid Claims, and identifies each person in the Settlement Class who timely and properly requested exclusion from the Settlement Class; and

     9.      Facilitate and process the payment from the Settlement Fund of the following:  (a) all Settlement Costs; (b) all Settlement Awards to claiming Settlement Class Members; and (c) any *Cy Pres* Distribution.

     E.    <u>Settlement Class Notice Program</u>.  The Notice Program will be comprised of Direct Notice and a Website Notice on the Settlement Website, as described below. The Claims Administrator shall, by the Notice Deadline, provide:

     1.    <u>Mail Notice</u>.  Within five (5) days following Preliminary Approval, Meadowbrook will provide to the Claims Administrator the Class List identifying the list of individuals or entities whose entries in Meadowbrook's GoldMine customer relationship management database includes a fax number.   The Claims Administrator shall rely on direct mail ("Mail Notice") to notify persons in the Settlement Class. The Mail Notice shall be in the

form attached hereto as Exhibit 3.  The Mail Notice will include a Claim Form which may be mailed back to submit a claim upon the Settlement Fund for a settlement award.  The Mail Notice will include summary information pursuant to Federal Rule of Civil Procedure 23(c)(2)(B) on how to obtain and submit the Claim Form.  The Mail Notice will also refer to the Toll-Free Settlement Hotline and the Settlement Website, which, as discussed below, will include information regarding the Settlement and also provide for online submission of the Claim Form and opt out requests.

      2.     <u>Website Notice</u>.  The Claims Administrator will establish and maintain the Settlement Website, using the domain name MeadowbrookTCPASettlement.com.  If the selected URL for the Settlement Website is not available or is rejected by the Court, a new URL will be selected and agreed upon by the Parties, and presented to the Court for approval.  The Claim Form, a copy of this Agreement, the Preliminary Approval Order and the operative Complaint, in addition to other relevant case documents, shall be available on the Settlement Website beginning five (5) days following the entry of the Preliminary Approval Order and remain until the Effective Date.  The Settlement Website also shall provide for online submission of Claim Forms and provide for persons in the Settlement Class to update their contact information.

      3.     <u>CAFA Notice</u>.  Meadowbrook shall be responsible for timely compliance with all CAFA notice requirements.

      F.     <u>Settlement Awards</u>.

      1.     <u>Awards</u>.  Each Settlement Class Member will be entitled to make one claim upon the Settlement Fund for a settlement award per individual or entity, regardless of the number of faxes the Settlement Class Member received, which will be payable as a cash award, as described below.  Each Settlement Class Member who submits a valid claim (subject to Section G.2. below) will be paid a Settlement Award on a pro rata basis up to $1,500, which shall be calculated by dividing the amount remaining in the Settlement Fund (after deducting all Settlement Costs) by the total number of valid claims (subject to Section G.2. below).

      2.     <u>Claims-Made Basis</u>. Settlement Awards shall be made to eligible Settlement Class Members on a claims-made basis. To make a claim for a Settlement Award, Settlement Class Members must submit a valid and timely Claim Form, which shall include: (a) the Settlement Class Member's Claim ID# found on the notice, (b) Settlement Class Member's full name and address, which shall prepopulate on the website claim form upon entry of a valid Claim ID; (c) written or electronic affirmation (for mailed Claim Forms or Claim Forms submitted via the Settlement Website) that the Settlement Class Member, during the class period, received an advertisement sent by or on behalf of Meadowbrook on the Settlement Class Member's telephone facsimile machine. The Claim Forms may be submitted to the Claims Administrator by mail or via the Settlement Website. Only one valid Claim Form will be honored per Settlement Class Member, regardless of the number of faxes the Settlement Class Member received.

      G.    <u>Distribution of Settlement Awards</u>.

      1.     <u>Settlement Award Payments</u>. Settlement Awards shall be paid by check. The Claims Administrator shall mail, by first-class mail, a check to each eligible, claiming Settlement Class Member receiving a check in payment of a Settlement Award within 30 days after the Effective Date. The Claims Administrator will perform skip tracing and re-mailing, as necessary; all costs of such work will be considered Settlement Costs. Checks will be valid for 180 days from the date on the check.

      2.     <u>Redistribution</u>. The amounts of any checks that remain uncashed more than 180 days after the date on the check will be redistributed where the residual amount of uncashed checks (net of anticipated administrative costs) is sufficient to provide checks of $10 on a pro rata basis to the eligible Settlement Class Members who cashed their first check. Settlement Class Members who do not cash their initial checks shall not be eligible for any Redistribution. To the extent the residual amount of uncashed checks (net of anticipated administrative costs) is not sufficient to provide $10 on a pro rata basis, the residual amount shall

be distributed as part of the *Cy Pres* Distribution.  No money remaining in the Settlement Fund shall revert to or otherwise be paid to Meadowbrook.

        3.     <u>*Cy Pres* Distribution</u>.  If there is any money remaining in the Settlement Fund after payment of the Settlement Costs, awards to Settlement Class Members and any Redistributions, such monies will be distributed to non-profit charitable organizations.  The Cy Pres Distribution shall be made 240 days after completion of the distribution of Settlement Awards or, if necessary, after all Redistributions have been exhausted, whichever is later.  The parties shall advise the Court that Plaintiff requests the *Cy Pres* be awarded to the National Consumer Law Center earmarked to work with the FCC and Congress to protect the protections afforded by the TCPA and Defendant requests the Cy Pres be awarded to Consumer Federation of America of earmarked to support consumer protections related to telephone service.

        H.    <u>Releases</u>.

        1.     As of the Effective Date, Plaintiff and the Settlement Class Members provide the following releases:

> Plaintiff and each and all Settlement Class Members, on behalf of themselves and their respective heirs, executors, administrators, representatives, agents, attorneys, partners, successors, predecessors-in-interest, assigns and any authorized users of their accounts, will be deemed to have fully released and forever discharged Meadowbrook Insurance Group, Inc., its Insurer, and each and all of its former and future direct and indirect parent companies, affiliates, subsidiaries, agents, successors, and/or predecessors in interest and all of the aforementioned's respective officers, directors, employees, attorneys, shareholders, agents, vendors and assigns (together, the "Released Parties") from any and all rights, duties, obligations, claims, actions, causes of action or liabilities, whether arising under local, state or federal law, whether by Constitution, statute, contract, rule, regulation, any regulatory promulgation (including, but not limited to, any opinion or declaratory ruling), common law or equity, whether known or unknown, suspected or unsuspected, asserted or unasserted, foreseen or unforeseen, actual or contingent, liquidated or unliquidated, punitive or compensatory as of the date of Preliminary Approval that arise out of or are related in any way to the actual or alleged sending of faxes in violation of the Telephone

Consumer Protection Act, 47 U.S.C. § 227, et seq. (the "Released Claims").

This Paragraph constitutes a waiver of, without limitation as to any other applicable law, Section 1542 of the California Civil Code, which provides:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR.

Plaintiff and the Settlement Class Members understand and acknowledge the significance of the waiver of California Civil Code Section 1542 and/or any other applicable federal or state statute, case law, rule or regulation relating to limitations on releases.  In connection with such waivers and relinquishment, Plaintiff and the Settlement Class Members acknowledge that they are aware that they may hereafter discover facts in addition to, or different from, those facts which they now know or believe to be true with respect to the subject matter of the settlement, but that it is their intention to release fully, finally and forever all Released Claims, and in furtherance of such intention, the release of the Released Claims will be and remain in effect notwithstanding the discovery or existence of any such additional or different facts.

I.   Attorneys' Fees And Costs.  Plaintiff shall move the Court for an award of attorneys' fees and costs to be paid to Class Counsel from the Settlement Fund.  Meadowbrook reserves the right to oppose such a motion and the amount requested.  Class Counsel will receive payment of the fees and costs awarded by the Court within five (5) business days following the Effective Date and the Court's entry of an order awarding fees and costs.  Court approval of attorneys' fees and costs, or their amount, will not be a condition of the Settlement.  In addition, no interest will accrue on such amounts at any time.  Class Counsel will provide W-9s and payment instruction to the Class Administrator.

J.   Service Awards.  Plaintiff shall move the Court for a "Service Award" to be paid out of the Settlement Fund, subject to Court approval.  PLAINTIFF RECOGNIZES AND

14

UNDERSTANDS THAT THE COURT MAY NOT APPROVE ANY SERVICE AWARD TO IT WHATSOEVER AND THAT ITS SUPPORT OF THE SETTLEMENT IS IN NO WAY CONTINGENT ON ANY SERVICE AWARD.   PLAINTIFF REPRESENTS AND WARRANTS THAT NO PROMISES OF ANY KIND HAVE BEEN MADE TO IT WITH RESPECT TO ANY SERVICE AWARD OR OTHERWISE.   Such Service Award shall be paid from the Settlement Fund and paid to Plaintiff at the same time as the attorneys' fees and costs payments to Class Counsel.   No interest shall accrue on such amounts at any time. Neither Court approval nor the amount of the Service Awards is a condition of the Settlement.

      K.    Opt-Out Right/Termination.

        1.    Opt-Out Requirements. Persons in the Settlement Class may request exclusion from the Settlement by sending a written request to the Claims Administrator at the address designated in the Class Notice no later than the Opt-Out and Objection Deadline. Exclusion requests must: (a) be personally signed by the person who is requesting exclusion or, in the case of entities, an authorized representative of the entity which is requesting exclusion; (b) include the full name and address of the person in the Settlement Class requesting exclusion; and (c) include the following statement: "I/we request to be excluded from the Settlement in the Meadowbrook action."   No request for exclusion will be valid unless all of the information described above is included.   No person in the Settlement Class, or any person acting on behalf of or in concert or participation with that person (including, but not limited to, an attorney) in the Settlement Class, may exclude any other person or any group of persons from the Settlement Class.

        2.    Retention of Exclusions. The Claims Administrator will retain a copy of all requests for exclusion and will, upon written request, provide copies of any such requests to counsel for the Parties.   Class Counsel will keep any such opt-out information confidential and use it only for purposes of determining whether a person in the Settlement Class has properly opted out.

3.      Termination of Settlement Agreement.   If more than 1,000 Persons who otherwise would be Settlement Class Members have timely requested exclusion from the Settlement Class in accordance with Section K.1 above, Meadowbrook shall have, in its sole and absolute discretion, the option to terminate this Settlement by providing written notice of the election to do so to all other Parties hereto within ten (10) days after learning from the Settlement Administrator that the number of valid opt-outs exceeds 1,000, but no later than seven (7) days prior to the Final Approval Hearing.

L.      Objections To The Settlement.

1.      Right To Object.   Any Settlement Class Member may appear at the Final Approval Hearing to object to the proposed Settlement and/or to the application of Class Counsel for an award of attorneys' fees and costs and/or a Service Award, but only if the Settlement Class Member has first filed a written objection with the Clerk of Court, in accordance with the requirements set forth below, by the Opt-Out and Objection Deadline.   Any Settlement Class Member who does not provide a written objection in the manner described in this Section shall be deemed to have waived any objection and shall forever be foreclosed from making any objection to the fairness, reasonableness, or adequacy of the Settlement or the award of any attorneys' fees and costs and/or Service Award.   Further, any Settlement Class Member who intends to appear at the Final Approval Hearing must file and serve on all parties a Notice of Intention to Appear with the Court.

2.      Objection Requirements.   To be heard at the Final Approval Hearing, the Settlement Class Member must make any objection in writing and file it with the Court by the Opt-Out and Objection Deadline.   The objection must also be mailed to each of the following, postmarked no later than the last day to file the objection: (a) Class Counsel – KEOGH LAW, LTD, 55 W. Monroe St. Suite 3390, Chicago, IL 60603; and (b) Meadowbrook's Counsel – HUNTON & WILLIAMS, LLP, 951 East Byrd Street, Richmond, VA 23219.   An objection must:  (a) attach documents establishing, or provide information sufficient to allow the Parties to confirm, that the objector is a Settlement Class Member, including providing the facsimile

telephone number to which Meadowbrook allegedly transmitted an advertisement; (b) include a statement of such Settlement Class Member's specific objections; (c) state the grounds for objection, including that the objector is objecting to the Settlement, as well as identify any documents which such objector desires the Court to consider; and (d) if the Settlement Class Member is represented by an attorney, list all other cases in which the Settlement Class Member has filed an objection.

M.    <u>Final Approval</u>.  Following completion of the Class Notice process and within 30 days following expiration of the Opt-Out and Objection Period, Plaintiff shall request that the Court enter the Final Approval Order in the form attached hereto as <u>Exhibit 5</u>, which shall specifically include provisions that: (a) finally approve the Settlement as fair, reasonable and adequate to the Settlement Class; (b) find that the Class Notice as given was the best notice practicable under the circumstances, is due and sufficient notice to the Settlement Class, and fully satisfies the requirements of due process and Federal Rule of Civil Procedure 23; (c) approve the plan of distribution for the Settlement Fund and any interest accrued thereon; (d) finally certify the Settlement Class; (e) confirm that the Releasing Parties have released all Released Claims and are permanently barred and enjoined from asserting, commencing, prosecuting, or continuing any of the Released Claims against the Released Parties; and (f) dismiss the Action with prejudice, without costs to any party, except as provided in this Agreement, and subject to the Court retaining continuing jurisdiction over the Parties and the Settlement Fund for the purpose of enforcement of the terms of this Agreement.

N.    <u>Dismissal</u>.  Upon entry of the Final Approval Order, the Action shall be dismissed with prejudice as to Plaintiff and all Settlement Class Members.

O.    <u>No Admissions</u>.  Meadowbrook expressly disclaims and denies any wrongdoing or liability whatsoever.  The Settlement, and any and all negotiations, statements, documents, and/or proceedings in connection with the Settlement, shall not be construed or deemed to be evidence of an admission or concession by the Released Parties of any liability or wrongdoing

17

and shall not be construed or deemed to be evidence of an admission or concession that any person suffered compensable harm or is entitled to any relief

## IV.   GENERAL PROVISIONS

A.   Settlement Conditioned Upon Approval.  The Settlement is conditioned upon entry of the Preliminary Approval Order and Final Approval Order without material modification by the Court.  In the event of failure to obtain any of the required provisions of such orders, including, but not limited to, the denial of any motion seeking preliminary or final approval, the Parties will return, without prejudice, to the status quo ante as if no Settlement had been negotiated or entered into and this Agreement, the Settlement and their existence shall be inadmissible to establish any fact relevant to any alleged liability of the Released Parties for the matters alleged in the Action or for any other purpose.

B.   Evidentiary Preclusion.  In order to support a defense or counterclaim based on principles of res judicata, collateral estoppel, release, good faith settlement, judgment bar or reduction or any other theory of claim preclusion or issue preclusion or similar defense or counterclaim, the Released Parties may file the Settlement Agreement and/or the judgment in any action or proceeding that may be brought against them.

C.   Confidentiality.  The terms of this Settlement, including the fact of the proposed Settlement, shall remain completely confidential until all documents are executed and a motion for preliminary approval of the Settlement is filed with the Court; provided, however, that the Parties may jointly report the pendency of the Settlement to the Court in the Action, and to potential claims administrators.  Meadowbrook may, at its sole discretion, disclose the terms of this Settlement to its auditors and other parties as reasonably necessary to maintain normal business operations and have the Settlement internally effectuated.

D.   Future Changes In Laws Or Regulations.  To the extent Congress, the Federal Communications Commission or any other relevant regulatory authority promulgates different requirements under the Telephone Consumer Protection Act, 47 U.S.C. § 227, et seq., or any other law or regulatory promulgation that would govern any conduct affected by the

18

Settlement, those laws and regulatory provisions shall control. However, the Parties agree that changes in law shall not provide any basis for any attempt to alter, modify or invalidate this Agreement. The Parties further agree that any outcome in litigation relating to the Federal Communications Commission's <u>Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991</u>, 29 FCC Rcd 13,998 (2014), including but not limited to the appeal styled <u>Bais Yaakov of Spring Valley v. FCC</u>, No. 14-1234, in the United States Court of Appeals for the District of Columbia, shall not provide any basis for any attempt to alter, modify or invalidate this Agreement.

E.   <u>Destruction of Confidential Documents</u>. It is agreed that the originals and all copies of all confidential documents and/or information subject to all confidentiality agreements and the Protective Order ("Confidential Material") shall be returned to the producing party or destroyed within sixty (60) days after the Effective Date.

F.   <u>No Construction Against Drafter</u>. This Settlement Agreement will be deemed to have been drafted by the Parties, and any rule that a document shall be interpreted against the drafter will not apply.

G.   <u>Entire Agreement</u>. This Agreement contains the entire agreement between the Parties and supersedes all prior understandings, agreements, or writings regarding the subject matter of this Agreement. This Agreement may be amended or modified only by a written instrument signed by all Parties or their successors in interest or their duly authorized representatives and approved by the Court. The provisions of the Agreement may be waived only in a writing executed by the waiving party. The waiver by one party of any breach of this Agreement by any other party shall not be deemed a waiver, by that party or by any other party, of any other prior or subsequent breach of this Agreement.

H.   <u>Authority</u>. Plaintiff and Meadowbrook represent and warrant that the persons signing this Agreement on their behalf have full power and authority to bind every person, partnership, corporation, or entity included within the definitions of Plaintiff and Meadowbrook to all terms of this Agreement. Any person executing this Agreement in a

representative capacity represents and warrants that he or she has done so freely and he or she is fully authorized to do so and to bind the Party on whose behalf he or she signs this Agreement to all of the terms and provisions of this Agreement.

I.   <u>No Assignment</u>.  No party to this Agreement has heretofore assigned, transferred, or granted, or purported to assign, transfer, or grant, any of the claims, demands, or cause or causes of action disposed of by this Agreement.

J.   <u>Receipt of Advice of Counsel</u>.  Each Party acknowledges, agrees and specifically warrants that he, she or it has fully read this Agreement and the Releases contained herein, received independent legal advice with respect to the advisability of entering this Agreement and the Releases, and the legal effects of this Agreement and the Releases, and fully understands the effect of this Agreement and the Releases.  Each Party to this Agreement warrants that he, she, or it is acting upon his, her or its independent judgment and upon the advice of his, her, or its own counsel and not in reliance upon any warranty or representation, express or implied, of any nature or kind by any other party, other than the warranties and representations expressly made in this Agreement.

K.   <u>Agreement Binding on Successors in Interest</u>.  This Agreement is binding on and shall inure to the benefit of the respective heirs, successors and assigns of the Parties.

L.   <u>Execution In Counterparts</u>.  The Parties may execute this Agreement in any number of counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.

M.   <u>Notices</u>.  All notices to counsel provided for herein shall be sent by e-mail with a hard copy sent by overnight mail to:

<u>As to Plaintiff and the Settlement Class:</u>

KEOGH LAW, LTD.
Keith Keogh
55 W. Monroe, Ste. 3390
Chicago, IL 60603

<u>As to Meadowbrook:</u>

Thomas R. Waskom
HUNTON & WILLIAMS LLP
951 East Byrd Street
Richmond, VA 23219

20

N.   <u>Retention of Jurisdiction</u>.   The Court shall retain jurisdiction with respect to implementation and enforcement of the terms of this Agreement, and all Parties submit to the jurisdiction of the Court for purposes of implementing and enforcing the Settlement embodied in this Agreement.

IN WITNESS WHEREOF, the Parties hereto have caused this Agreement to be executed as follows:

**PLAINTIFF:**

_____

Town & Country Jewelers, LLC

Dated: _____, 2017

**MEADOWBROOK INSURANCE GROUP, INC:**

By: _____

Kenn R. Allen

Its: President & CEO

Dated: May 2, 2017

**APPROVED AS TO FORM AND CONTENT:**

**CLASS COUNSEL**

Keogh Law, LTD.

By: _____

Keith Keogh

Dated: _____, 2017

**MEADOWBROOK'S COUNSEL**

Hunton & Williams LLP

By: _____

Thomas R. Waskom

Dated: May 2, 2017

21

N.   <u>Retention of Jurisdiction</u>.   The Court shall retain jurisdiction with respect to implementation and enforcement of the terms of this Agreement, and all Parties submit to the jurisdiction of the Court for purposes of implementing and enforcing the Settlement embodied in this Agreement.

IN WITNESS WHEREOF, the Parties hereto have caused this Agreement to be executed as follows:

**PLAINTIFF:**

Dated: 4-28, 2017

Town & Country Jewelers, LLC

**MEADOWBROOK INSURANCE GROUP, INC:**

By:  _____   Dated: _____, 2017

Its:  _____

**APPROVED AS TO FORM AND CONTENT:**

**CLASS COUNSEL**

Keogh Law, LTD.

By:  _____   Dated:  May 1, 2017
      Keith Keogh

**MEADOWBROOK'S COUNSEL**

Hunton & Williams LLP

Dated: _____, 2017

By:  _____
      Thomas R. Waskom

21