**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

| | | |
|---|---|---|
| TOWN & COUNTRY JEWELERS, LLC, individually and on behalf of all others similarly situated, | : : : : | CIVIL ACTION <br><br> NO. 3:15-cv-02519-PGS-LHG |
| Plaintiff, | : : | |
| v. | : : | |
| MEADOWBROOK INSURANCE GROUP, INC., | : : | |
| Defendant. | : | |

## MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR AN ORDER GRANTING FINAL APPROVAL OF CLASS SETTLEMENT AGREEMENT

Plaintiff Town & Country Jewelers, LLC ("Plaintiff"), individually, and as representative of the class of persons defined below in Paragraph 3(a) ("Settlement Class"), requests that this Court enter an order granting Final Approval to the Class Settlement Agreement ("Agreement") with Defendant, Meadowbrook Insurance Group, Inc. ("Defendant" or "Meadowbrook") filed as 71-2 and attached hereto *Exhibit 1*; award Class Plaintiff one third of the Settlement Fund for reasonable attorney fees inclusive of costs a reasonable incentive award and award Class Counsel reasonable attorney fees and costs as set forth in ECF 77.

On May 19, 2017, Defendant sent notice of the class settlement pursuant to the Class Action Fairness Act, 28 U.S.C. §1715(b) to the appropriate officials.  Dkt. No. 72.  On June 21, 2017, the Court granted preliminary approval of the Settlement. Dkt. No. 75. Per the Court-approved notice plan, direct individual notice of the Settlement was disseminated to 39,332 potential[1] Class Members.  *See* Declaration of Jay Geraci re: Notice Procedures, ¶¶ 3-6, Exhibit

---

[1] As explained in the motion for preliminary approval, Meadowbrook did not have a list of advertising fax recipients.  Therefore, the parties undertook extensive efforts to determine the number of faxes that constitute advertisements sent during a four-month portion of the Class Period chosen by Class Counsel.  Extrapolating that

2 ("Geraci Decl.").   A state-of-the-art, user-friendly claims process allowed Class members to file claims through a simple claim form, an internet website (www.FaxTCPASettlement.com), and a toll-free phone number was provided in the notice to provide information to the Class Members. *Id*. at ¶7.   On August 31, 2017, Plaintiff filed his motion for attorney fees and incentive awards.  Dkt 77.

To date over 1,692 persons have submitted valid[2] claims forms, while no one excluded themselves from the class and no one objected.  *Id*. at ¶8-11.   Plaintiff respectfully submits that the lack of objectors and exclusions speaks to the effectiveness of the notice plan, and the ease and efficiency of the claims administration plan negotiated by Class counsel.

The claim rate is either 46.5% of the estimated class of 3,636 class members based on the parties' extrapolation or 4.3% of the universe of potential class members.  Regardless of which percentage is correct, the claim result in excellent.  The overwhelmingly positive reaction from Class Members also underscores the value the Class places on the Settlement obtained. Defendant will pay the total sum of $1,500,000 into a non-reversionary cash fund out of which claiming Class Members will be paid.  Upon final approval, the net proceeds of the Settlement Fund will be distributed pro rata to every claimant up to $1,500; no money will revert back to Defendant.  If the Court grants the requested service award and attorney fees, each class member will receive $543, which is right in line with the class notice estimate of $300-$500.  Plaintiff respectfully submits this is a great result for the Class, particularly in view of the risks and delays

---

number to the four years prior to the filing of the Complaint would result in 3,636 faxed advertisements.  Of course, the total number of sent faxes and Settlement Class Members may be higher or lower than the extrapolated number. As such, the parties agreed to an over inclusive notice plan that would provide direct notice to the approximately 39,000 individuals or entities listed in Meadowbrook's GoldMine customer relationship management database for which the GoldMine entry includes a fax number.

3

[2]   There were 11,894 claims submitted that were invalid as they were submitted by non-class members whose facsimile numbers were not on the class list.  *Id*. ¶10 (explaining the large number of invalid claims after the settlement appeared on various third party websites).

involved in litigating the substantive merits of these claims, and the difficulties inherent in pursuing these claims individually for the overwhelming majority of Class Members.

For the foregoing reasons, and as detailed below, the Settlement meets the standards for final approval, and should therefore be approved.

## I.    NATURE OF THE LITIGATION

1.    Plaintiff filed a class action Complaint on April 08, 2015 (ECF No. 1), a First Amended Complaint on June 19, 2015 (ECF No. 14), and a Second Amended Complaint on September 09, 2016 (ECF No. 49). In Plaintiff's Second Amended Complaint Plaintiff alleges that Meadowbrook violated the Telephone Consumer Protection Act, 47 U.S.C. §§227, *et seq.* ("TCPA"), by sending unsolicited advertisements by fax.

On May 29, 2015, Defendant proffered an Offer of Judgment on the Plaintiff. On June 01, 2015, Plaintiff filed a Motion to Certify the Class (ECF No. 9). The same day, Defendant filed a 12(b)(6) Motion to Dismiss in light of Defendant's pending Offer of Judgment to Plaintiff.  (ECF No. 10). Plaintiff filed an opposition to the Motion to Dismiss on June 19, 2015 (ECF No. 16), and Defendant filed their reply brief in support of the Motion to Dismiss on July 21, 2015 (ECF No. 20). On July 28, 2015, the Honorable Judge Sheridan stayed this action pending the resolution of *Campbell-Ewald Co. v. Gomez*, S. Ct. Docket No. 14-857 (ECF No. 21). On February 17, 2016, in light of the Supreme Court of the United States issuing a ruling in *Campbell Ewald v. Gomez*, 136 S. Ct. 663 (2016) that an offer of judgment cannot moot a class action, the stay was vacated (ECF No. 25). An answer to the First Amended Complaint was filed on March 17, 2016 (ECF No. 26).

The Defendant then filed a Motion for Summary Judgment on April 13, 2016 (ECF No. 29). On May 23, 2016, Plaintiff filed a Memorandum in Opposition to said Motion (ECF No.

34), and Defendant filed their Reply Brief on May 31, 2016 (ECF No. 35). On June 06, 2016, the parties participated in oral argument on the summary judgment motion.  On July 06, 2016, the Court denied Defendant's Motion for Summary Judgment (ECF No. 37).

On July 25, 2016, Defendant then filed a Motion to Strike Plaintiff's Class Allegations (ECF No. 40). The Plaintiff, upon stipulation agreed upon by all parties, filed their Second Amended Complaint on September 09, 2016 (ECF No. 47), after which the Defendant filed a Motion to Dismiss for Lack of Subject Matter Jurisdiction or in the Alternative to Strike Plaintiff's Class Allegations on September 09, 2016 (ECF No. 50). Plaintiff filed their Memorandum in Opposition on October 02, 2016 (ECF No. 55). On November 2, 2016, oral argument was held before Judge Sheridan via telephone.

While this case was ongoing, the parties engaged in informal discovery relating to the class. As part of that process, Meadowbrook undertook extensive efforts to determine the number of faxes that constitute advertisements sent during a four-month portion of the Class Period chosen by Class Counsel.  The purpose of this effort was to determine an approximation of the number of class members, recognizing that the number could be higher or lower than a simple extrapolation. Throughout this process the parties engaged in extensive arms-length settlement negotiations with the hope of resolving the Litigation. The Court granted the parties request to defer ruling on the Motion to Dismiss or in the Alternative Strike Plaintiff's Class Allegations filed September 09, 2016, so the parties could continue to negotiate, which ultimately culminated in an agreement to settle the claims of Plaintiff and Settlement Class, as set forth in *Exhibit 1*.

Counsel for the Parties have investigated and analyzed the legal and factual issues presented in this action, the risks and expense involved in pursuing the litigation to conclusion,

the likelihood of recovering damages in excess of those obtained through this settlement, the protracted nature of the litigation and the likelihood, costs and possible outcomes of one or more procedural and substantive appeals. Based upon counsels' review and analysis, the Parties have entered into the Agreement.

## II.    <u>NATURE OF SETTLEMENT</u>

The Settlement's details are contained in the Agreement attached as *Exhibit 1*. The following summarizes the Agreement's terms:

The Parties have stipulated to certification of the following class for settlement purposes only.

> All persons nationwide within the United States who are included in Meadowbrook's GoldMine customer relationship management database and received any advertisement on their telephone facsimile machines from Defendant or its agents or employees since April 8, 2011 through preliminary approval.

As noted above, because Meadowbrook did not have a list of advertising fax recipients, the parties undertook extensive efforts to determine the number of faxes that constitute advertisements sent during a four-month portion of the Class Period chosen by Class Counsel. Extrapolating that number to the four years prior to the filing of the Complaint would result in 3,636 faxed advertisements.  As such, the parties agreed to an over inclusive notice plan that would provide direct notice to the approximately 39,000 individuals or entities listed in Meadowbrook's GoldMine customer relationship management database for which the GoldMine entry includes a fax number.  [<u>Exhibit 1</u>, Section I ¶C].

(a)    <u>Settlement Class Recovery</u>. MEADOWBROOK created a class settlement fund of $1,500,000.00 ("Class Recovery"), which the Class Administrator, Kurtzman Carson Consultants ("KCC") ("Class Administrator") will distribute among those Settlement Class Members who submit valid claims, and who do not exclude

themselves from the Settlement ("Claimants"), on a pro rata basis up to $1,500, which shall be calculated by dividing the amount remaining in the Settlement Fund (after deducting all Settlement Costs) by the total number of valid claims. [Exhibit A, Section III ¶¶F.1]. [Exhibit 1, Section III ¶G.1].

Based on the valid claims, Plaintiff estimates each Claimant's pro rata share after administration costs, court awarded attorney fees and incentive award will be $543.

If any portion of the Settlement Class Recovery remains after the void date on the Claimants' checks, these residual funds will be redistributed where the residual amount of the uncashed checks is sufficient to provide checks of $10 on a pro rata basis to the eligible Settlement Class Members who cashed their first check. [Exhibit 1, Section III ¶¶ G.3]

(b)     Relief to Plaintiff. Plaintiff has moved for a service award of $10,000 as set forth in the motion for service award and attorney fees filed on August 21, 2017. Dkt. 77.  The class notice explicitly set forth this request[3] and no class member objected.  *See Exhibit 2* at *Exhibit B*.

(c)     Attorneys' Fees and Costs. Plaintiff has moved for an award of attorney's fees and costs to be paid to Class Counsel from the Settlement Fund in the amount of

---

[3] The notice provided "The Settlement Fund will pay cash awards to Class Members who file a valid claim on a pro rata basis up to $1,500 after Class Counsel's attorneys' fees and costs of up to one third of the settlement which is $500,000 (subject to Court approval), a service award of $10,000 to Plaintiff (subject to Court approval), pay settlement administration costs.

one third of the Settlement Fund ($500,000) inclusive of costs as set forth in the motion for service award and attorney fees filed on August 21, 2017.  Dkt. 77. The class notice set forth this request and no class member objected.  *See Geraci Dec*. *Exhibit 2* at *Exhibit B*

(d)   Settlement Class Notice. As noted above, KCC sent the class notice to the list of individuals or entities whose entries in Meadowbrook's GoldMine customer relationship management database includes a fax number. *Id*. at ¶3-5.

(e)   Limited Release.  The class release in this case is limited to claims that arise out of or are related in any way to the actual or alleged sending of faxes in violation of the Telephone 14 Consumer Protection Act, 47 U.S.C. § 227, et seq.

(f)   Cy Pres. To the extent the residual amount of uncashed checks is not sufficient to provide $10 on a pro rata basis for a second distribution, the residual amount will be donated as a cy pres award to a charitable organization approved by the Court. [Exhibit 1, Section III ¶¶ G.2)]. Plaintiff proposed that the cy pres award be donated to National Consumer Law Center earmarked to work with the FCC and Congress to protect the protections afforded by the TCPA and Defendant previously proposed the Consumer Federation of America but as explained below, no longer opposes NCLC.

## III.    THE PROPOSED CLASS MEETS SATISFIES FED. R. CIV. P. 23

When the Court preliminarily approved this settlement, it considered whether the Settlement class could be conditionally certified for settlement purposes. *See Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 620 (1997) (trial court may disregard management issues in

certifying a settlement class, but the proposed class must still satisfy the other requirements of Rule 23).

During the pendency of the case Meadowbrook also disclosed information relevant to the requirements of Fed. R. Civ. P. 23, including the size of the putative class, which the Parties have relied upon in reaching the Agreement and in bringing this motion. In considering the proposed settlement, the first question for the Court is whether a settlement class may be conditionally certified for settlement purposes. *See Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 296 (3d Cir. 2011) (*en banc*) ("[B]efore approving a class settlement agreement, a district court first must determine that the requirements for class certification under Rule Fed. R. Civ. P. 23(a) and (b) are met." (internal quotation marks oitted)); *In re Cmty. Bank of N. Va.,* 418 F.3d 277, 300 (3d Cir. 2005) ("[R]egardless of whether a district court certifies a class for trial or for settlement, it must first find that the class satisfies all the requirements of Rule 23.").

This Court initially found that the proposed Agreement meets all of the requirements of Rule 23 when it entered the order Preliminary Approving the Agreement and the class notice process has confirmed that finding.

## A.  Numerosity.

As noted above, to determine the approximate size of the Settlement Class, Meadowbrook reviewed a four-month sample of advertisements it faxed.  Extrapolating that number to the four years prior to the filing of the Complaint would result in 3,636 faxes, though the actual number is likely higher or lower.  To date, there are 1,692 valid claim forms, which is sufficient by itself to satisfy numerosity as the joinder of all members is impracticable. *Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 259 F.3d 154, 182 (3d Cir. 2001)); *Bulk Extruded Graphite,* 206 WL 891362 at *5 (Numerosity satisfied where traditional joinder of parties would

be "unworkable"). Generally, if the "potential number of plaintiffs exceed 40, the [numerosity] prong of Rule 23(a) has been met." *Stewart v. Abraham,* 275 F.3d 220, 226-27 (3d Cir. 2001). As a result, the numerosity requirement is satisfied.

**B. Commonality**.

Satisfaction of the commonality requirement under Rule 23(a)(2) requires that Plaintiff demonstrate its claims "depend upon a common contention," the resolution of which "will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal–Mart Stores, Inc. v. Dukes,* 131 S.Ct. 2541, 2551 (2011). "The commonality requirement will be satisfied if the named plaintiffs share at least one question of fact or law with the grievances of the prospective class." *Johnston v. HBO Film Mgmt., Inc.*, 265 F.3d 178, 183 (3d Cir. 2001) (internal quotation marks omitted); *see also Marcus v. BMW of N. Am., LLC*, 687 F.3d 583, 597–98 (3d Cir. 2012). As this Circuit reiterated recently, "that bar is not a high one. We have acknowledged commonality to be present even when not all plaintiffs suffered an actual injury, id., when plaintiffs did not bring identical claims, … and, most dramatically, when some plaintiffs' claims may not have been legally viable, …. In reaching those conclusions, we explained that the focus of the commonality inquiry is not on the strength of each plaintiff's claim, but instead is "on whether the defendant's conduct was common as to all of the class members." *Rodriguez v. National City Bank*, 726 F.3d 372, 382-83 (3d Cir. 2013) (citations omitted) (reviewing commonality standard in light of *Wal–Mart Stores, Inc. v. Dukes*, 131 S.Ct. 2541 (2011), and concluding that while "Dukes is an intervening and pointedly clear explication of the law, it did not announce any change in the test for determining commonality." *Rodriguez*, 726 F.3d at 381, n. 2)).

The primary questions, which focus on the uniform conduct and procedures of the Defendant, are common to the Class. The Settlement Class members have identical legal claims based upon a facsimile advertisement sent by Meadowbrook to Plaintiff and each Settlement Class member.

## C. Typicality.

This requirement is "designed to align the interests of the class and the class representatives so that the latter will work to benefit the entire class through the pursuit of their own goals." *In re Prudential*, 148 F.3d at 311. The "typicality" requirement of Rule 23(a)(3) is satisfied for the reasons that the "commonality" requirement of Rule 23(a)(2) is met. *Keele v. Wexler*, 149 F.3d 589, 595 (7th Cir. 1998). To conduct the typicality inquiry, the court must examine "whether the named plaintiffs' claims are typical, in common-sense terms, of the class, thus suggesting that the incentives of the plaintiffs are aligned with those of the class." *Beck v. Maximus, Inc.*, 457 F.3d 291, 295–96 (3d Cir. 2006). Here, Plaintiff's claims share the same common issues of fact and law as those held by the Settlement Class members – namely, Meadowbrook faxed an advertisement to the Plaintiff and Settlement Class members which was allegedly in violation of the TCPA. The Plaintiff as a member of the Settlement Class, has the same interest in resolution of the issues as all other members of the Class and its claims are typical of all members of the Class. In the present matter, the typicality requirement is satisfied.

## D. Adequacy of Representation.

Plaintiff's counsel is experienced in class action and TCPA litigation. In addition, Plaintiff has no interests which are antagonistic to the Settlement Class members. Therefore, Plaintiff and his counsel satisfy the adequacy of representation requirement embodied in Rule 23(a)(4). The Declaration of Ari Marcus, Keith Keogh and Yitzchak Zelman, were attached both

to the motion for preliminary approval as well as the motion for service award and attorney fees at 71-8, 71-9, 71-10, 77-3, and 77-5.  These declarations outline their qualifications to serve as Class Counsel.

**E.  Predominance and Superiority**.

In addition to meeting the requirements of Rule 23(a), a money-damages class must satisfy Rule 23(b)(3), namely that (1) "questions of law or fact common to the members of the class  predominate over any questions affecting only individual members" and, (2) "a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed R. Civ. P. 23(b)(3). Both of these requirements are satisfied in the present case.

**1.  Common Questions of Law and Fact Predominate Over Individual Ones**

Resolution of the common issues of fact and law in this case will not only promote the efficient adjudication of these matters, it will dispose of them entirely.  Allowing this case to proceed as a class action would be an efficient means of resolving the claims at issue, where there are thousands of members of the Proposed Class, and each member possesses a claim based on receipt of fax solicitations sent to them by the Defendant. Plaintiff alleges on behalf of the Class that the sending of those faxes – the factual issue central to Plaintiff's claim which are generally common to all members of the Settlement Class – is a violation of the TCPA as a matter of law. This legal question is common to all members of the Settlement Class.

**2.  A Class Action is the Superior Method for Resolving the Class Claims**

As to superiority, class settlement is the most efficient means of adjudicating the disputes raised here. Aggregating all possible TCPA claims based on Defendant's

advertisement practices will eliminate the potential for "repetitious litigation" and "inconsistent adjudications" if the claims were brought separately, and which otherwise "might stand in the way of a beneficial comprehensive settlement." *See D'Alauro,*168 F.R.D. at 458. Separately litigating the common issues that bind the Settlement Class would be a practical impossibility, even assuming consumers had notice of their claims and it were economically feasible to pursue these claims on their own. Where the alternative to a class action is likely to be no action at all for most of the class members, there is strong presumption in favor of a finding of superiority. *Cavin v. Home Loan Ct., Inc.* 236, F.R.D. 387, 396 (N.D. Ill. 2006).

## IV.   FINAL APPROVAL SHOULD BE GRANTED

When a proposed class-wide settlement is reached, it must be submitted to the Court for approval. H. Newberg & A. Conte, NEWBERG ON CLASS ACTIONS § 11.41 (4th ed. 2009) ("NEWBERG"); *Oslan v. Law Offices of Mitchell N. Kay*, 232 F. Supp. 436, 439-40 (E.D. Pa. 2002).

Preliminary approval was the first of essentially three steps that comprise the approval procedure for settlement of a class action. The second step was the dissemination of notice of the settlement to all class members. The third step is a settlement approval or final fairness hearing. *See* MANUAL FOR COMPLEX LITIGATION 4TH, § 21.63 (2004), available at http://www.fjc.gov ("MANUAL"). While a settlement class must satisfy each of the requirements of Rule 23(a) and Rule 23(b)(3), "the fact of settlement is relevant to a determination of whether the proposed Class meets the requirement imposed by the Rule." *In re: Prudential Ins. Co. of America Sales Litigation*, 148 F.3d 283, 308- 09 (3d Cir. 1998)).

The question presented on a motion for final approval of a proposed class action settlement is whether the proposed settlement is fair in light of the following factors:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation…

*Girsh*, 521 F.2d at 157; *In re Prudential*, 148 F.3d at 317; *In re Rite Aid Corporation Securities Litig.*, 269 F.Supp.2d 603, 607 (E.D. Pa. 2003), 362 F. Supp.2d 587 (E.D. Pa. 2005) (on remand).

The approval of a proposed settlement of a class action is a matter within the broad discretion of the trial court. Of course, settlements of class actions are favored in the law. *See In re: General Motors Truck Litig.*, 55 F.3d 768, 784 (3d Cir. 1995).

This Court is now asked to ascertain whether the proposed settlement is within a "range of reasonableness" which experienced attorneys could accept in light of the relevant risks of the litigation. S*ee Walsh v. Great Atlantic and Pacific Tea Co.*, 96 F.R.D. 632, 642 (D.N.J.), aff'd, 726 F.2d 956 (3d Cir. 1983). In determining what falls within this range, the Court should bear in mind "the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion …." *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972).

This determination is made only after notice of the settlement has been given to the members of the class and after they have been given an opportunity to voice their views of the settlement or be excluded from the class. *See In re Linerboard Litig.*, 296 F. Supp. 2d 568, 577-78 (E.D. Pa. 2003) (citing factors established in *Girsh v. Jepson,* 521 F.2d 153 (3d Cir. 1975)).

As noted above, no class member has objected to any portion of the class settlement, no class member has sought exclusion and many class members have submitted valid claims.

The question of whether a proposed settlement is fair, reasonable and adequate necessarily requires a judgment and evaluation by the attorneys for the parties based upon a comparison of "the terms of the compromise with the likely rewards of litigation." *Weinberger v. Kendrick*, 698 F.2d 61, 73 (2d Cir. 1982); *Collier v. Montgomery County*, 192 F.R.D. 176, 184 (E.D. Pa. 2000) (citing factors established in *Girsh*). Therefore, many courts recognize that the opinion of experienced counsel supporting the settlement is entitled to considerable weight. *See Collier*, 192 F.R.D. at 186; *Fisher Bros. v. Cambridge-Lee Indus, Inc*., 630 F. Supp. 482, 487-88 (E.D. Pa. 1985).

Here, experienced counsel firmly believes that the settlement, as structured and contemplated by the parties, represents an eminently reasonable resolution of the dispute. An evaluation of the relevant factors demonstrates that the Settlement fits well within the range of reasonableness and should be approved.

A.   **The Complexity, Expense And Likely Duration Of The Litigation; Risk of Establishing liability and the Risk of Maintaing the Class Action Through Trial and Beyond**

Absent the settlement, the Court would be required to rule on the many issues likely to be raised in this litigation including class certification and summary judgment. While Plaintiff believes it would prevail on all issues, there is at least some risk it would not. Avoidance of this unnecessary expenditure of time and resources clearly benefits all parties. *See In re General Motors Pick-Up Truck Fuel Tank Products Liab. Litig.*, 55 F.3d 768, 812 (3d Cir. 1995) (concluding that lengthy discovery and ardent opposition from the defendant with "a plethora of pretrial motions" were facts favoring settlement, which offers immediate benefits and avoids delay and expense).  There is substantial risk that any victory at trial would be hollow, leaving class members with nothing if Defendant successfully appealed. *See West Virginia v. Chas.*

14

*Pfizer & Co.,* 314 F. Supp. 710, 743-44 (S.D.N.Y. 1970) ("It is known from past experience that no matter how confident one may be of the outcome of litigation, such confidence is often misplaced."), *aff'd,* 440 F.2d 1079 (2d Cir. 1971); *see also Berkey Photo, Inc. v. Eastman Kodak Co.,* 603 F.2d 263 (2d Cir. 1979) (reversing $87 million judgment after trial). In contrast, the settlement makes substantial monetary relief available to Class Members in a prompt and efficient manner.

### B. The Reaction Of The Class To The Settlement

As set forth above, notice has been directly mailed to members of the Settlement Class advising them of the terms of the Settlement and their right to object or exclude themselves from the Class. The deadline for both was October 31, 2017.  Yet not a single class member excluded themselves or objected to the settlement.   This is convincing evidence of the proposed settlement's fairness and adequacy. *See In re Rite Aid Securities Litig.*, 396 F.3d 294, 305 (3d Cir. 2005) (agreeing with district court that two objections out of 300,000 class members was a "rare phenomenon");

### C. The Stage Of The Proceedings And The Amount Of Discovery Completed

This litigation was filed in April 2015 and had seen substantial motion practice.  In addition, the parties exchanged information relating to class data to allow Plaintiff to extrapolate an estimated class size that provided sufficient information for the parties to assess the settlement's fairness adequately. As a result of the parties' efforts, the litigation had reached the stage where "the parties certainly [had] a clear view of the strengths and weaknesses of their cases." *Bonett*, 2003 WL 21658267, at *6 (E.D. Pa. 2003), quoting *In re Warner Communications Sec. Litig.*, 618 F. Supp. 735, 745 (S.D.N.Y. 1985), aff'd, 798 F.2d 35 (2d Cir. 1986).

**D.     The Range Of Reasonableness Of The Settlement To A Possible Recovery In Light Of All The Attendant Risks Of Litigation**

The expected recovery of $543 for each of the valid claims greatly exceeds many other TCPA class settlements. *See  cf. Couser v. Comenity Bank*, 125 F. Supp. 3d 1034 (S.D. Cal. 2015) (settlement amount favored final approval, where claims rate resulted in *pro rata* payment of approximately $13.75 per class member); *Manouchehri v. Styles for Less, Inc.*, No. 14cv2521 NLS, 2016 U.S. Dist. LEXIS 80038, at *4 (S.D. Cal. June 20, 2016) (preliminarily approving settlement where class members could choose to receive either a $10 cash award or a $15 voucher); *Spillman v. RPM Pizza, LLC*, 2013 U.S. Dist. LEXIS 72947 at *2, *9 (M.D. La. May 23, 2013) (final approve for up to $15 for each claimant); *Garret, et al. v. Sharps Compliance, Inc.*, No. 1:10-cv-04030, Dkt. No. 65 (N.D. Ill. Feb. 23, 2012) (claimants received between $27.42 and $28.51); *Hashw v. Dep't Stores Nat'l Bank*, 2016 U.S. Dist LEXIS 61004 (D. Minn. 2016) (finally approving settlement where "each claimant will receive approximately $33.20."); *In re Capital One TCPA Litigation*, 12-cv-10064 (MDL No. 2416) (N.D. Ill. Feb. 12, 2015) (granting final approval were each claimant would be awarded $39.66); *Adams v. AllanceOne Receivables Mgmt., Inc.*, No. 3:08-cv-00248-JAH-WVG, Dkt. No. 137 (S.D. Cal. Sept. 28, 2012) (claimants received $40 each); *Wright v. Nationstar Mortg. LLC*, 2016 U.S. Dist. LEXIS 115729, *28 (N.D. Ill. 2016) (finally approving "$45.00 recovery per claimant"); *Steinfeld v. Discover Fin. Servs.*, 2014 U.S. Dist. LEXIS 44855 at *4 and *11-*12 (N.D. Cal. Mar. 31, 2014) ($46.98 to each claimant); *Gehrich v. Chase Bank U.S.A, N.A.*, 2016 U.S. Dist. LEXIS 26184 (N.D. Ill 2016) (final approval where "the actual recovery per claimant is approximately $52.50").  It should be rembered that the TCPA provides $500 per violation and only provides up to $1,500 if Defendant acted willfully.

Thus, the amount each Settlement Class member shall receive is fair, reasonable, and adequate given the purposes of the TCPA and the risk, expense, and uncertainty of continued litigation. *See Hashw,* 2016 U.S. Dist LEXIS 61004 at*13 ("Given that victory was by no means certain and even if achieved, victory likely would have been a lengthy and costly affair for class members (as the TCPA includes no fee-shifting provision), in the Court's view an immediate, definite payment of $33.20 is both reasonable and fair."); *See In re General Motors Pick-Up Truck Fuel Tank Products Liab. Litig.*, 55 F.3d 768, 812 (3d Cir. 1995) (concluding that lengthy discovery and ardent opposition from the defendant with "a plethora of pretrial motions" were facts favoring settlement, which offers immediate benefits and avoids delay and expense).

### E.     The Release is Narrowly Tailored To the Claim Brought

Finally, the release in this case is narrow in that it is limited to the sending of faxes. Specifically the release provides

> As of the Effective Date, Plaintiff and the Settlement Class Members provide the following releases:
>
> Plaintiff and each and all Settlement Class Members, on behalf of themselves and their respective heirs, executors, administrators, representatives, agents, attorneys, partners, successors, predecessors-in-interest, assigns and any authorized users of their accounts, will be deemed to have fully released and forever discharged Meadowbrook Insurance Group, Inc., its Insurer, and each and all of its former and future direct and indirect parent companies, affiliates, subsidiaries, agents, successors, and/or predecessors in interest and all of the aforementioneds' respective officers, directors, employees, attorneys, shareholders, agents, vendors and assigns (together, the "Released Parties") from any and all rights, duties, obligations, claims, actions, causes of action or liabilities, whether arising under local, state or federal law, whether by Constitution, statute, contract, rule, regulation, any regulatory promulgation (including, but not limited to, any opinion or declaratory ruling), common law or equity, whether known or unknown, suspected or unsuspected, asserted or unasserted, foreseen or unforeseen, actual or contingent, liquidated or unliquidated, punitive or compensatory as of the date of Preliminary Approval that arise out of or are related in any way to the actual or alleged sending of faxes in violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227, et seq. (the "Released Claims").

*See Exhibit 1*p.13 ¶H.

V.    **CY PRES**

As set forth in the Preliminary Approval Motion, the parties did not agree on a *cy pres* recipient. Plaintiff requested that the *Cy Pres* funds be awarded to the National Consumer Law Center (NCLC), and that the funds be earmarked for work associated with the FCC and Congress to protect consumer protections under the TCPA. Defendant requested the *cy pres* be issued to Consumer Federation of America earmarked to support consumer protections related to telephone service. Based on the number of claims, the parties believe it is likely that there will not be any need for a cy pres award. Indeed, only if a recipient fails to deposit their check would money be available for a cy pres award. Recognizing that any cy pres award would be at most de minimis, Defendant no longer opposes the NCLC.

Plaintiff submits that other courts have approved similar cy pres award to NCLC in TCPA class actions like this one. *See Exhibit 3 - Allen v. JPMorgan Chase Bank, N.A.*, 13-cv-8285 (N.D. Ill.) at ¶ 9 (Finally approving *cy pres* payment to NCLC in a TCPA class action and ordering that the funds be "earmarked for work associated with the FCC to protect consumer protections under the TCPA.") *See Exhibit 4 - Willett v Redflex*, 13-cv-1241-JCH/LAM (D. NM.) at ¶ 17 (Same).

NCLC has been at the forefront of consumer protection advocacy before the FCC, leading a coalition of consumer groups opposing petitions filed by the banker's associations and debt collectors to weaken consumer protections. Plaintiffs submit that a *cy pres* award to the NCLC earmarked for this purpose is directly aligned with the class' interests and is therefore appropriate in this TCPA action. A letter from NCLC describing its work with the FCC and the TCPA is attached as *Exhibit 5*.

VI.   **APPROVAL OF SERVICE AWARD AND ATTORNEY FEES**

Unlike many consumer protection statutes, the TCPA does not contain an attorney fee shifting provision. As such, Class Counsel is entitled to recover attorney fees from the common fund. *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478, 100 S. Ct. 745, 749, 62 L. Ed. 2d 676 (1980)("[A] litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole.")

Calculating attorneys' fees in class actions based on a common fund is favored because it rewards counsel for success and penalizes counsel for waste or failure even in cases where there is a fee shifting provision. *In re Rite Aid Corp. Securities Litigation*, 396 F.3d 294, 300 (3d Cir 2005).

On August 31, 2017, Plaintiff filed his motion for attorney fees and request for service award setting forth the legal and factual basis for both. Dkt. No. 77.  In addition, the class notice provided "The Settlement Fund will pay cash awards to Class Members who file a valid claim on a pro rata basis up to $1,500 after Class Counsel's attorneys' fees and costs of up to one third of the settlement which is $500,000 (subject to Court approval), a service award of $10,000 to Plaintiff (subject to Court approval), pay settlement administration costs, and possibly pay a charitable contribution to cy pres. *See Exhibit 2* at Exhibit B.

Not a single class member objected to Plaintiff's service award or Class Counsels request for attorney's fees of one third of the settlement inclusive of costs[4].   *Id*. at 12.

---

[4] As numerous district courts have held, the dearth of objections "strongly supports approval of the requested fee." *In re Flonase Antitrust Litig*., No. 08-cv-3149, 2013 WL 2915606, at *7 (E.D. Pa. June 14, 2013); *see also In re Schering-Plough Corp. Enhance ERISA Litig*., No. 08-cv-1432, 2012 WL 1964451, at *6 (finding the "lack of objections to the requested attorneys' fees supports the request"); *Moore v. Comcast Corp.*, No. 08-cv-773, 2011 WL 238821, at *5 (recognizing as significant that "not one member of the class ha[d] filed an objection to the settlement" despite the fact that notice was mailed to 35,360 class members).

19

For the reasons set forth in Plaintiff's motion for attorney fees and service award, Plaintiff submits that it and class counsel conferred a real benefit to the class and an award of $10,000 service award[5] and an award of $500,000 inclusive of costs, which equals one third of the class fund is fair and reasonable.

**CONCLUSION**

Accordingly, the Parties request that this Court grant Final approval of the Settlement Agreement and enter the proposed order attached as Exhibit 6.

Respectfully submitted this 21st day of November, 2017.

---

[5]   This award is well within the range of awards made in consumer cases in this Circuit. *See Sapp*, 2013 WL 2130956, at * 3 (awarding $15,000 to class representative in FCRA settlement); *Giddiens v. LexisNexis Risk Solutions, Inc.*, C.A. No. 12-2624-LDD (E.D. Pa. Jan. 20, 2015) (Doc. 55) (final approval order awarding $10,000 individual settlement to class representative in FCRA case); *Robinson*, No. 2:11-cv-07782-PBT (E.D. Pa. Nov. 4, 2014) (Doc. 55) (same); *King*, C.A. No. 10-

*s/ Ari Marcus*

Ari H. Marcus, Esq.
MARCUS & ZELMAN, LLC
1500 Allaire Avenue, Suite 101
Ocean, New Jersey 07712
Telephone: (732) 695-3282
Facsimile:   (732) 298-6256
E-Mail: Ari@MarcusZelman.com

Keith J. Keogh
Bar Number 6257811IL, 0126335FL
KEOGH LAW, LTD.
55 W. Monroe, Suite 3390
Chicago, Illinois 60603
Telephone:  (312) 374-3405
Fax:  (312) 726-1093
E-Mail: Keith@Keoghlaw.com

*Attorneys for Plaintiff*